UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        -v-          :

LIBORIO S. BELLOMO,          :
    a/k/a "Barney,"
JOHN ARDITO,          :
    a/k/a "Buster,"
RALPH BALSAMO,          :
    a/k/a "the Undertaker,"
    a/k/a "Skully,"          :
SALVATORE LARCA,
    a/k/a "Sal,"          :
GERALD FIORINO,
    a/k/a "Jerry,"          :
VINCENT RUSSO,
    a/k/a "Vinny,"          :
ALBERT TRANQUILLO, JR.
    a/k/a "Allie Boy,"          :
LOUIS MOSCATIELLO,
ARTHUR NIGRO,          :
PASQUALE DELUCA,
    a/k/a "Scop,"          :
ANTHONY ROMANELLO,
    a/k/a "Rom,"          :
ALBERT FACCIANO,
    a/k/a "Chinky,"          :
PASQUALE SPERDUTO,
ANGELO AQUILLINO,          :
TOMAS TERRACIANO,
JAMES PISACANO,          :
JOSEPH PISACANO,
WALTER GALIANO,          :
CLAUDIO CAPONIGRO,
    a/k/a "Claudio the Barber,"  :
ANTHONY NEGRI, SR.,
ALBERT FAELLA,          :
ANDREW SHEA,
JOHN TOMERO,          :
JOSEPH DEROSA,
JOSEPH LANZA,          :
RAYMOND DELAROSA,
    a/k/a "Spider,"          :
DOMINICK BRUNO,
VINCENT RENDINO,          :
    a/k/a "Pinchy,"

INDICTMENT

S1 06 Cr. 08 (LAK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 1 5 2006

```
ERIC CMIEL,                          :
LOUIS GRILLO,
     a/k/a "Louie Gatts,"           :
MARK FIORE,
     a/k/a "Choda," and             :
SAMUEL LOPEZ,
                                     :
          Defendants.

- - - - - - - - - - - - - - - -x
```

## COUNT ONE

### Racketeering Conspiracy

The Grand Jury charges:

### The Enterprise

1.    At all times relevant to this Indictment, LIBORIO
S. BELLOMO, a/k/a "Barney Bellomo," JOHN ARDITO, a/k/a "Buster,"
RALPH BALSAMO, a/k/a "the Undertaker," a/k/a "Skully," SALVATORE
LARCA, a/k/a "Sal," GERALD FIORINO, a/k/a "Jerry," VINCENT RUSSO,
a/k/a "Vinny," and ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the
defendants, and others known and unknown, were members and
associates of the Genovese Organized Crime Family of La Cosa
Nostra (the "Genovese Organized Crime Family").  The Genovese
Organized Crime Family was a criminal organization whose members
and associates engaged in numerous acts of violence and other
crimes, including murder; conspiracy to commit murder; extortion;
labor racketeering; obstruction of justice; money laundering;
narcotics trafficking; loansharking; and the operation of illegal
gambling businesses.

2

2.     The Genovese Organized Crime Family, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.  The Genovese Organized Crime Family was an organized criminal group based in New York City that operated in the Southern District of New York and elsewhere and constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The Genovese Organized Crime Family was referred to by its members and associates in various ways, including as a "cosa nostra," a "Family," and "this thing of ours."

3.     The Genovese Organized Crime Family was part of a nationwide criminal organization known by various names, including the "Mafia" and "La Cosa Nostra" ("LCN"), which operated through entities known as "Families."  The Genovese Organized Crime Family took its name from one of its early leaders, Vito Genovese.  In addition to the Genovese Organized Crime Family, five other Families operated in the New York City and New Jersey area, namely, the Gambino Organized Crime Family of LCN, the Luchese Organized Crime Family of LCN, the Colombo

3

Organized Crime Family of LCN, the Bonanno Organized Crime Family of LCN, and the Decavalcante Organized Crime Family of LCN.

4.   The Genovese Organized Crime Family operated through groups of individuals known as "crews" and "regimes," most of which were based in New York City.  Each "crew" had as its leader a person known as a "Caporegime," "Capo," "Captain," or "Skipper," and consisted of "made" members, sometimes known as "Soldiers," "wiseguys," "friends of ours," and "good fellows." Soldiers were aided in their criminal endeavors by other trusted individuals, known as "associates," who sometimes were referred to as "connected" or identified as "with" a Soldier.  Associates participated in the various activities of the crew and its members.

5.   Each Capo was responsible for supervising the criminal activities of his crew and provided Soldiers and associates with support and protection.  In return, the Capo typically received a share of the illegal earnings of each of his crew's Soldiers and associates, which was sometimes referred to as "tribute."

6.   Above the Capos were the highest-ranking members of the Genovese Organized Crime Family, commonly referred to as the Administration.  The head of the Genovese Organized Crime Family was known as the "Boss," who was ordinarily assisted by an "Underboss" and a "Consigliere," or counselor.  The Boss,

4

Underboss, and Consigliere were responsible for, among other things, setting policy, resolving disputes between and among members of the Genovese Organized Crime Family, and resolving disputes between members of the Genovese Organized Crime Family and members of other criminal organizations.  The Administration of the Genovese Organized Crime Family was also responsible for overseeing the criminal activities of the Family's Soldiers and associates, and was at times called upon to make decisions regarding those criminal endeavors.

7.   At various times relevant to this Indictment, members of the Genovese Organized Crime Family were temporarily appointed to serve as Boss, Underboss, Consigliere, or Capo in place of another member holding that position.  Whenever this occurred, the member holding the temporary appointment would function in an "acting" capacity for the other member, who continued to hold the "official" position in the Family.  In addition, at various times relevant to this Indictment, members of the Genovese Organized Crime Family served on a committee or ruling panel, a group of high-ranking members of the Family who assisted and, at times, made decisions with, or on behalf of, the Boss and the Acting Boss of the Family.

8.   The Boss, Underboss, and Consigliere (whether official or acting) and, at times, the members of the ruling panel, supervised, supported, protected, and disciplined the

Capos, Soldiers, and associates, and regularly received reports regarding their various activities.  In return for their supervision and protection, the Boss, Underboss, and Consigliere and members of the ruling panel typically received part of the illegal earnings of each crew.

9.    While the overall structure of the Genovese Organized Crime Family remained constant, the structure of the Family's Administration was sometimes adjusted to meet situations -- including particularly the incarceration of the Boss, Acting Boss, and other high-ranking members of the Family -- that threatened to impede the orderly operation and criminal activities of the Genovese Organized Crime Family.  Accordingly, at some point following the arrest of the now-deceased Boss of the Genovese Organized Crime Family, Vincent Gigante, in or about 1992, Genovese Organized Crime Family Capo LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," became the Acting Boss of the Genovese Family.  BELLOMO continued to operate in that position up through at least 1998, following his incarceration in 1996, and subsequent conviction in 1997 on Federal extortion charges in the United States District Court for the Southern District of New York.  From in or about 1998, up through and including in or about 2006, the Genovese Organized Crime Family has been run by a series of high-ranking members serving as Acting Bosses or on a ruling panel.

## The Defendants

10.   At all times relevant to this Indictment, LIBORIO
S. BELLOMO, a/k/a "Barney Bellomo," JOHN ARDITO, a/k/a "Buster,"
RALPH BALSAMO, a/k/a "the Undertaker," a/k/a "Skully," SALVATORE
LARCA, a/k/a "Sal," GERALD FIORINO, a/k/a "Jerry," VINCENT RUSSO,
a/k/a "Vinny," and ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the
defendants, and Louis Moscatiello, Arthur Nigro, a/k/a "Artie,"
and Pasquale Deluca, a/k/a "Scop," Anthony Romanello, a/k/a
"Rom," and Albert Facciano, a/k/a "Chinky," were members and
associates of the enterprise, the Genovese Organized Crime
Family. BELLOMO, ARDITO, BALSAMO, LARCA, FIORINO, RUSSO, and
TRANQUILLO, JR., Moscatiello, Nigro, Deluca, Romanello, and
Facciano, participated in the operation and management of the
enterprise as follows:

a.   LIBORIO S. BELLOMO, a/k/a "Barney Bellomo,"
the defendant, was, at various times relevant to this Indictment,
a Soldier, Capo, and Acting Boss of the Genovese Organized Crime
Family.  Prior to becoming Acting Boss of the Genovese Organized
Crime Family in or about 1992, BELLOMO was first a Soldier in the
Genovese Family, and then a powerful Capo, who controlled a crew
of Soldiers and associates based in the Bronx, New York.  BELLOMO
was responsible for, amongst other things, control over labor
unions associated with the Jacob Javits Convention Center in
Manhattan.  BELLOMO became the Acting Boss of the Genovese

Organized Crime Family in or about 1992, following the incarceration of Genovese Family Boss Vincent Gigante.  In or about 1996, BELLOMO was himself incarcerated after being arrested on Federal criminal charges filed in the United States District Court for the Southern District of New York.  Following his incarceration, and even after being replaced as Acting Boss, BELLOMO retained significant power and authority within the Genovese Organized Crime Family, and he continued to be consulted on, and make decisions with respect to, the Genovese Family's criminal activities.  In or about 1997, following his conviction on Federal extortion charges, BELLOMO was sentenced to a term of 10 years' imprisonment.  BELLOMO's criminal activities included the 1998 murder of Ralph Coppola, a Genovese Family Soldier and Acting Capo, as well as his participation in two schemes to obstruct justice, one by conspiring to tamper with a potential witness, and the other by giving false and misleading testimony in a grand jury proceeding.

     b.   JOHN ARDITO, a/k/a "Buster," the defendant, was, at various times relevant to this Indictment, a Soldier and a Capo in the Genovese Organized Crime Family.  ARDITO and his crew were based in the Bronx, New York, where ARDITO supervised various illegal activities of the Genovese Family.  ARDITO regularly conducted meetings with other members and associates of the Genovese Family at various restaurants in the Bronx and

8

Westchester, including Pasquale Rigoletto's Restaurant and Mario's Restaurant in the Bronx, Agostino's Restaurant and Brunello's Trattoria in New Rochelle.  ARDITO also controlled and assisted in controlling certain labor unions on behalf of the Genovese Family, including Local 102 of the Bakery, Confectionary and Tobacco Workers' Union and Local 15 of the International Union of Operating Engineers.  Among ARDITO's criminal activities were participation in extortions, obstruction of justice, witness tampering, money laundering, labor racketeering, loansharking, and gambling.

       c.   RALPH BALSAMO, a/k/a "the Undertaker," a/k/a "Skully," the defendant, was, at various times relevant to this Indictment, an associate and a Soldier in the Genovese Organized Crime Family.  BALSAMO has long had a close relationship with an Acting Boss and member of the ruling panel of the Genovese Organized Crime Family, and often carried messages to and from this individual, who is currently imprisoned.  BALSAMO also owned a funeral home in the Bronx, New York, which was often used as a meeting place for members and associates of the Genovese Organized Crime Family.  In his capacity as a Soldier in the Genovese Family, BALSAMO, among other things, supervised a crew of associates who distributed cocaine in the Bronx and Westchester.  Among BALSAMO's criminal activities were

9

participation in obstruction of justice, labor racketeering, extortions, and the operation of an illegal gambling business.

d.   SALVATORE LARCA, the defendant, was, at various times relevant to this Indictment, an associate and a Soldier in the Genovese Organized Crime Family.   LARCA was closely associated with fellow Genovese Family Soldier RALPH BALSAMO, with whom LARCA has engaged in firearms trafficking, amongst other crimes.   Among LARCA's criminal activities were participation in obstruction of justice and labor racketeering.

e.   GERALD FIORINO, a/k/a "Jerry," the defendant, was, at various times relevant to this Indictment, an associate in the Genovese Organized Crime Family.   FIORINO was in the crew of his brother-in-law, LIBORIO S. BELLOMO, a/k/a "Barney," the defendant.   FIORINO owned a jewelry store in the Bronx, New York, at which members and associates of the Genovese Family have regularly met in order to discuss the operation and criminal activities of the Family.   Among FIORINO's criminal activities were participation in extortion and money laundering.

f.   VINCENT RUSSO, a/k/a "Vinny," the defendant, was, at various times relevant to this Indictment, an associate in the Genovese Organized Crime Family, in the crew of JOHN ARDITO, a/k/a "Buster."   In or about 2005 and 2006, ARDITO attempted to have RUSSO inducted into the Genovese Family.   Among RUSSO's

criminal activities were participation in an extortion and obstruction of justice.

g.    ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the defendant, was, at various times relevant to this Indictment, an associate in the Genovese Organized Crime Family, in the crew of imprisoned Capo Pasquale Parello.  TRANQUILLO, JR., ran a business called A&D Carting, also called Transcamp Carting, which maintained contracts to haul trash, dirt, and concrete for various entities.  Among TRANQUILLO, JR.'s criminal activities was participation in the extortion of several competitors and associates in the carting industry.

h.    Louis Moscatiello was, at various times relevant to this Indictment, a Soldier and an Acting Capo in the Genovese Organized Crime Family.  Among Moscatiello's criminal activities was participation in an extortion.

i.    Albert Facciano, a/k/a "Chinky," was, at various times relevant to this Indictment, a Soldier in the Genovese Organized Crime Family who was based in Florida.  Among Facciano's criminal activities was participation in a conspiracy to obstruct justice.

j.    Anthony Romanello, a/k/a "Rom," was, at various times relevant to this Indictment, a Soldier and an Acting Capo in the Genovese Organized Crime Family.  Among Romanello's criminal activities was participation in an extortion.

11

k.    Arthur Nigro, a/k/a "Artie," was, at various times relevant to this Indictment, a Soldier and an Acting Capo in the Genovese Organized Crime Family.  Among Nigro's criminal activities was participation in an extortion.

l.    Pasquale Deluca, a/k/a "Scop," was, at various times relevant to this Indictment, a Soldier in the Genovese Organized Crime Family.  Among Deluca's criminal activities was participation in an extortion.

<u>Purposes of the Enterprise</u>

11.  The purposes of the enterprise included the following:

a.    Enriching the leaders, members, and associates of the enterprise through, among other things: (i) the extortionate control of businesses, labor unions, persons, and property through threats of physical and economic harm; (ii) labor racketeering; (iii) the making, financing, and collection of extortionate extensions of credit, commonly known as "loansharking;" (iv) the operation of illegal gambling businesses; (v) money laundering; and (vi) narcotics trafficking;

b.    Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm; and

12

c.    Keeping victims and citizens in fear of the enterprise and its leaders, members, and associates by: (i) identifying the enterprise, its members, and its associates with La Cosa Nostra or the "Mafia;" (ii) causing and threatening to cause economic harm; and (iii) committing and threatening to commit physical violence.

<u>Means and Methods of the Enterprise</u>

12.   Among the means and methods by which the defendants and other enterprise members and associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.    To protect and expand the enterprise's business and criminal operations, members and associates of the enterprise murdered, threatened, assaulted, and intimidated persons who engaged in activity that jeopardized (i) the power and criminal activities of the enterprise and the power and criminal activities of fellow LCN Families, (ii) the power of leaders of the enterprise, and (iii) the flow of criminal proceeds to the leaders of the enterprise.

b.    Members and associates of the enterprise promoted a climate of fear in the community through threats of economic harm and violence.

c.    Members and associates of the enterprise generated income for the enterprise through, among other things,

13

(i) extortion; (ii) labor racketeering; (iii) the operation of illegal gambling businesses; (iv) loansharking; (v) money laundering; and (vi) the distribution of cocaine.

        d.    Members and associates of the enterprise at times engaged in criminal conduct or coordinated their criminal activities with leaders, members, and associates of other LCN Families.  At other times, members and associates of the enterprise met with leaders, members, and associates of other LCN Families to resolve disputes over their criminal activities.

        e.    Members and associates of the enterprise controlled various labor unions and attempted to use their control over the unions to obtain benefits for the enterprise.

        f.    Members and associates of the enterprise used various techniques to avoid law enforcement scrutiny of the enterprise's criminal activities.  Members and associates of the enterprise typically used coded language to make arrangements for meetings and to refer to other members and associates of the enterprise, and took other steps to frustrate law enforcement's attempts to overhear their discussions.  Members and associates of the enterprise also engaged in other evasive conduct, such as whispering and speaking in hushed tones, in an effort to obstruct potential law enforcement eavesdropping, and not specifying the names of those about whom they were speaking.  Members and associates of the enterprise also attempted to, and did, locate

concealed recording equipment used by law enforcement officials
to record their discussions and activities in various locations,
including several restaurants where members and associates
regularly met to discuss the operations and criminal activities
of the enterprise. Members and associates of the enterprise also
engaged in "walk and talks" to further frustrate law enforcement
surveillance.

g.   In order to frustrate investigations of their
criminal conduct, members and associates of the enterprise
attempted to, and did, obstruct justice by, among other things,
meeting with individuals questioned by federal agents or
subpoenaed by federal grand juries and influencing the
information that those individuals would provide to law
enforcement authorities.

h.   In order to maintain and continue the
operations of the enterprise, members and associates of the
enterprise used attorneys to pass messages, information and
orders to and from imprisoned members and associates of the
enterprise.  Attorneys were also used to pass messages,
information and orders between and among members and associates
of the enterprise and members and associates of other LCN
Families.  Members and associates of the enterprise used
attorneys in this fashion in the belief that any communications

in which attorneys participated would not be monitored by law
enforcement.

      i.   Members and associates of the enterprise
attempted to identify and did identify individuals suspected of
providing, or deemed likely to provide, information to law
enforcement about the enterprise, its members and activities, and
about other LCN Families.  Members and associates of the
enterprise traveled to different parts of the United States,
including Florida, to attempt to locate and tamper with
witnesses.

      j.  To conceal their receipt of money generated
from their criminal activities, members and associates of the
enterprise concealed their ownership of various assets that were
purchased with proceeds from their criminal activities, and
engaged in financial transactions with such proceeds in order to
conceal the nature, source and ownership of such proceeds.

<u>The Racketeering Conspiracy</u>

      13.  From at least in or about the early 1990s, up
through and including in or about February 2006, in the Southern
District of New York and elsewhere, LIBORIO S. BELLOMO, a/k/a
"Barney Bellomo," JOHN ARDITO, a/k/a "Buster," RALPH BALSAMO,
a/k/a "the Undertaker," a/k/a "Skully," SALVATORE LARCA, a/k/a
"Sal," GERALD FIORINO, a/k/a "Jerry," VINCENT RUSSO, a/k/a
"Vinny," and ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the

defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 12 above, namely, the Genovese Organized Crime Family, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, intentionally, and knowingly combined, conspired, confederated, and agreed together and with each other to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), which pattern is set forth more fully in paragraphs 16 through 27 below, as Racketeering Acts One through Eleven.  It was a further part and an object of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

### COUNT TWO

### Racketeering

The Grand Jury further charges:

14.  Paragraphs 1 through 12 of this Indictment are repeated and realleged and incorporated by reference as though fully set forth herein.

17

15.   From at least in or about the early 1990s, up
through and including in or about February 2006, in the Southern
District of New York and elsewhere, LIBORIO S. BELLOMO, a/k/a
"Barney Bellomo," JOHN ARDITO, a/k/a "Buster," RALPH BALSAMO,
a/k/a "the Undertaker," a/k/a "Skully," GERALD FIORINO, a/k/a
"Jerry," VINCENT RUSSO, a/k/a "Vinny," and ALBERT TRANQUILLO,
JR., a/k/a "Allie Boy," the defendants, and others known and
unknown, being persons employed by and associated with the
racketeering enterprise described in Paragraphs 1 through 12
above, namely, the Genovese Organized Crime Family, which
enterprise was engaged in, and the activities of which affected,
interstate and foreign commerce, unlawfully, intentionally, and
knowingly conducted and participated, directly and indirectly, in
the conduct of the affairs of that enterprise through a pattern
of racketeering activity, as that term is defined in Title 18,
United States Code, Sections 1961(1) and 1961(5), that is,
through the commission of the following racketeering acts:

<u>The Pattern of Racketeering</u>

16.   The pattern of racketeering activity, as defined
in Title 18, United States Code, Sections 1961(1) and 1961(5),
consisted of the following acts:

**<u>Racketeering Act One -- Conspiracy to Murder Ralph Coppola
and Murder of Ralph Coppola</u>**

17.   LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," the
defendant, committed the following acts of racketeering, any one

18

of which alone constitutes the commission of Racketeering Act One:

     a.   In or about 1998, in the Southern District of New York, the District of New Jersey, and elsewhere,   LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," the defendant, and others known and unknown, unlawfully, willfully, and knowingly conspired to murder Ralph Coppola, in violation of New York State Penal Law, Sections 105.15 and 125.25.

     b.   In or about 1998, in the Southern District of New York, the District of New Jersey, and elsewhere, LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," the defendant, and others known and unknown, unlawfully, intentionally, and knowingly did commit an act involving murder and aided and abetted murder, to wit, with intent to cause the death of another person, BELLOMO and others known and unknown did cause the death of Ralph Coppola, in violation of New York State Penal Law, Sections 125.25 and 20.00.

### Racketeering Act Two - Extortion of Victim-1

     18.   The defendants named below committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Two:

     a.   From in or about November 2003, up to and including in or about January 2004, in the Southern District of New York and elsewhere, JOHN ARDITO, a/k/a "Buster," and GERALD FIORINO, a/k/a "Jerry," the defendants, and others known and

unknown, unlawfully, willfully, and knowingly did combine,

conspire, confederate, and agree together and with each other to

commit extortion, as that term is defined in Title 18, United

States Code, Section 1951(b)(2), by obtaining money and property

from and with the consent of another person, to wit, the owner of

a construction company that was engaged in interstate commerce

("Victim-1"), which consent would have been and was induced by

the wrongful use of actual and threatened force, violence, and

fear, and thereby would and did obstruct, delay, and affect

commerce and the movement of articles and commodities in

commerce, as that term is defined in Title 18, United States

Code, Section 1951(b)(3), to wit, ARDITO, FIORINO, and other

members and associates of the Genovese Organized Crime Family,

agreed to use threats of violence and economic harm to force

Victim-1 to pay a debt of $150,000, in violation of Title 18,

United States Code, Section 1951.

b.    From in or about November 2003, up to and

including in or about January 2004, in the Southern District of

New York and elsewhere, JOHN ARDITO, a/k/a "Buster," and GERALD

FIORINO, a/k/a "Jerry," the defendants, and others known and

unknown, unlawfully, willfully, and knowingly did commit, and

attempt to commit,  extortion, as that term is defined in Title

18, United States Code, Section 1951(b)(2), by attempting to

obtain money and property from and with the consent of another

person, to wit, Victim-1, which consent was induced by the
wrongful use of actual and threatened force, violence, and fear,
and thereby would and did obstruct, delay, and affect commerce
and the movement of articles and commodities in commerce, as that
term is defined in Title 18, United States Code, Section
1951(b)(3), to wit, ARDITO, FIORINO, and other members and
associates of the Genovese Organized Crime Family, used threats
of violence and economic harm in an attempt to force Victim-1 to
pay a debt of $150,000, in violation of Title 18, United States
Code, Section 1951 and 2.

<u>**Racketeering Act Three − Extortion of Victim-2**</u>

19.    The defendants named below committed the following
acts of racketeering, any one of which alone constitutes the
commission of Racketeering Act Three:

a.    From at least in or about January 2000, up to
and including in or about January 2005, in the Southern District
of New York and elsewhere, JOHN ARDITO, a/k/a "Buster," and
VINCENT RUSSO, a/k/a "Vinny," the defendants, and others known
and unknown, unlawfully, willfully, and knowingly did combine,
conspire, confederate, and agree together and with each other to
commit extortion, as that term is defined in Title 18, United
States Code, Section 1951(b)(2), by obtaining money and property
from and with the consent of another person, to wit, the owner
and operator of a bakery involved in interstate commerce

("Victim-2"), which consent would have been and was induced by
the wrongful use of actual and threatened force, violence, and
fear, and thereby would and did obstruct, delay, and affect
commerce and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), to wit, ARDITO, RUSSO, and other
members and associates of the Genovese Organized Crime Family,
agreed to use threats of economic harm and violence to force
Victim-2 to make payments to a member of the Genovese Organized
Crime Family, in violation of Title 18, United States Code,
Section 1951.

        b.    From at least in or about January 2000, up to
and including in or about January 2005, in the Southern District
of New York and elsewhere, JOHN ARDITO, a/k/a "Buster," and
VINCENT RUSSO, a/k/a "Vinny," the defendants, and others known
and unknown, unlawfully, willfully, and knowingly did commit
extortion, as that term is defined in Title 18, United States
Code, Section 1951(b)(2), by obtaining money and property from
and with the consent of another person, to wit, Victim-2, which
consent was induced by the wrongful use of actual and threatened
force, violence, and fear, and thereby did obstruct, delay, and
affect commerce and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States
Code, Section 1951(b)(3), to wit, ARDITO, RUSSO, and other

22

members and associates of the Genovese Organized Crime Family,
used threats of economic harm and violence to force Victim-2 to
make payments to the Genovese Organized Crime Family, in
violation of Title 18, United States Code, Sections 1951 and 2.

### Racketeering Act Four - Extortion of Victim-3

20.   ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the
defendant, committed the following acts of racketeering, any one
of which alone constitutes the commission of Racketeering Act
Four:

a.   From at least in or about January 2000, up to
and including in or about February 2006, in the Southern District
of New York and elsewhere, ALBERT TRANQUILLO, JR., a/k/a "Allie
Boy," the defendant, and others known and unknown, unlawfully,
willfully, and knowingly did combine, conspire, confederate, and
agree together and with each other to commit extortion, as that
term is defined in Title 18, United States Code, Section
1951(b)(2), by obtaining money and property from and with the
consent of another person, to wit, the owner and operator of a
construction company ("Victim-3") engaged in interstate commerce,
which consent would have been and was induced by the wrongful use
of actual and threatened force, violence, and fear, and thereby
would and did obstruct, delay, and affect commerce and the
movement of articles and commodities in commerce, as that term is
defined in Title 18, United States Code, Section 1951(b)(3), to

wit, TRANQUILLO, JR., and other members and associates of the
Genovese Organized Crime Family, agreed to use threats of force
and economic harm, and actual violence, against Victim-3, in
order to force Victim-3 to resolve a monetary dispute, including
a disputed monetary claim, with associates of the Genovese
Organized Crime Family, in violation of Title 18, United States
Code, Section 1951.

        b.    From at least in or about January 2000, up to
and including in or about February 2006, in the Southern District
of New York and elsewhere, ALBERT TRANQUILLO, JR., a/k/a "Allie
Boy," the defendant, and others known and unknown, unlawfully,
willfully, and knowingly did commit extortion, as that term is
defined in Title 18, United States Code, Section 1951(b)(2), by
obtaining money and property from and with the consent of another
person, to wit, Victim-3, which consent was induced by the
wrongful use of actual and threatened force, violence, and fear,
and thereby did obstruct, delay, and affect commerce and the
movement of articles and commodities in commerce, as that term is
defined in Title 18, United States Code, Section 1951(b)(3), to
wit, TRANQUILLO, JR., and other members and associates of the
Genovese Organized Crime Family, used threats of force and
economic harm, and actual violence, against Victim-3, in order to
force Victim-3 to resolve a monetary dispute, including a
disputed monetary claim, with associates of the Genovese

Organized Crime Family, in violation of Title 18, United States Code, Sections 1951 and 2.

## Racketeering Act Five - Extortion of the Owners, Operators and Employees of Carting Company-1

21.   ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the defendant, committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Five:

a.   From in or about April 2005, up to and including in or about February 2006, in the Southern District of New York and elsewhere, ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owners, operators and employees of a carting and waste-hauling company engaged in interstate commerce ("Carting Company-1"), which consent would have been and was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TRANQUILLO, JR., and other members and associates of the Genovese Organized Crime

Family, agreed to use threats of force and economic harm, and actual violence, to force the owners, operators and employees of Carting Company-1 to return property, including customer accounts, to TRANQUILLO JR.'s business and businesses in which TRANQUILLO, JR. had a financial interest, and to stop recruiting customers away from TRANQUILLO, JR.'s business and businesses in which TRANQUILLO, JR. had a financial interest, in violation of Title 18, United States Code, Section 1951.

        b.    From in or about April 2005, up to and including in or about February 2006, in the Southern District of New York and elsewhere, ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owners, operators and employees of Carting Company-1, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TRANQUILLO, JR., and other members and associates of the Genovese Organized Crime Family, used threats of force and economic harm, and actual violence, to force the owners, operators and employees of Carting

Company-1 to return property, including customer accounts, to
TRANQUILLO JR.'s business and businesses in which TRANQUILLO, JR.
had a financial interest, and to stop recruiting customers away
from TRANQUILLO, JR.'s business and businesses in which
TRANQUILLO, JR. had a financial interest, in violation of Title
18, United States Code, Sections 1951 and 2.

## Racketeering Act Six - Extortion of the Owners, Operators and Employees of Carting Company-2

22.   ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the
defendant, committed the following acts of racketeering, any one
of which alone constitutes the commission of Racketeering Act
Six:

a.   From in or about April 2005, up to and
including in or about February 2006, in the Southern District of
New York and elsewhere, ALBERT TRANQUILLO, JR., a/k/a "Allie
Boy," the defendant, and others known and unknown, unlawfully,
willfully, and knowingly did combine, conspire, confederate, and
agree together and with each other to commit extortion, as that
term is defined in Title 18, United States Code, Section
1951(b)(2), by obtaining money and property from and with the
consent of another person, to wit, the owners, operators and
employees of a carting and waste hauling company engaged in
interstate commerce ("Carting Company-2"), which consent would
have been and was induced by the wrongful use of actual and
threatened force, violence, and fear, and thereby would and did

27

obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TRANQUILLO, JR., and other members and associates of the Genovese Organized Crime Family, agreed to use threats of force and economic harm, and actual violence, to force the owners, operators and employees of Carting Company-2 to stop recruiting customers, including customer accounts, away from TRANQUILLO, JR.'s business and businesses in which TRANQUILLO, JR. had a financial interest, in violation of Title 18, United States Code, Section 1951.

      b.    From in or about April 2005, up to and including in or about February 2006, in the Southern District of New York and elsewhere, ALBERT TRANQUILLO, JR., a/k/a "Allie Boy," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by obtaining money and property from and with the consent of another person, to wit, the owners, operators and employees of Carting Company-2, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TRANQUILLO, JR., and other members and associates of the Genovese Organized Crime

Family, used threats of force and economic harm, and actual

violence, to force the owners, operators and employees of Carting

Company-2 to stop recruiting customers, including customer

accounts, away from TRANQUILLO, JR.'s business and businesses in

which TRANQUILLO, JR. had a financial interest, in violation of

Title 18, United States Code, Sections 1951 and 2.

### Racketeering Act Seven - Money Laundering

23.   From at least in or about January 2003, up through

and including in or about January 2005, in the Southern District

of New York and elsewhere, JOHN ARDITO, a/k/a "Buster," and

GERALD FIORINO, a/k/a "Jerry," the defendants, and others known

and unknown, in an offense involving and affecting interstate and

foreign commerce, knowing that the property involved in certain

financial transactions represented the proceeds of some form of

unlawful activity, unlawfully, willfully, and knowingly, did

combine, conspire, confederate, and agree together and with each

other to conduct such financial transactions which in fact

involved the proceeds of specified unlawful activity, to wit,

loansharking, in violation of Title 18, United States Code,

Sections 892 and 894, extortion, in violation of Title 18, United

States Code, Section 1951, and the operation of an illegal

gambling business, in violation of Title 18, United States Code,

Section 1955, knowing that the transactions were designed in

whole and in part to conceal and disguise the nature, the

location, the source, the ownership, and the control of the
proceeds of specified unlawful activity, to wit, ARDITO,
FIORINO, and other members and associates of the Genovese
Organized Crime Family engaged in various financial transactions
using the illegal proceeds of ARDITO's criminal activities,
including loansharking, extortion, and gambling, in order to
conceal and disguise the nature, location, source and ownership
of such proceeds, in violation of Title 18, United States Code,
Sections 1956(a)(1)(B)(i) and (h).

### **Racketeering Act Eight – Obstruction Of Justice of Victim-4**

24.   The defendants named below committed the following
acts of racketeering, any one of which alone constitutes the
commission of Racketeering Act Eight:

a.   From in or about January 2004, up through and
including in or about February 2006, in the Southern District of
New York and elsewhere, JOHN ARDITO, a/k/a "Buster," RALPH
BALSAMO, a/k/a "the Undertaker," a/k/a "Skully," and VINCENT
RUSSO, a/k/a "Vinny," the defendants, and others known and
unknown, unlawfully, willfully and knowingly combined, conspired,
confederated, and agreed together and with each other to use
intimidation, threaten, and corruptly persuade another person,
with intent to influence, delay, and prevent the testimony of
such person in an official proceeding, and to hinder, delay and
prevent the communication to a law enforcement officer and judge

30

of the United States of information relating to the commission
and possible commission of a federal offense, to wit, ARDITO,
BALSAMO, RUSSO, and other members and associates of the Genovese
Organized Crime Family, agreed to corruptly persuade a person
("Victim-4") to withhold information from federal law enforcement
officers and truthful testimony in an official proceeding, which
information and testimony related to an assault on Victim-4 in
which a portion of Victim-4's ear was bitten off by a member of
the Genovese Organized Crime Family, in violation of Title 18,
United States Code, Sections 1512(b) and (k).

      b.   From in or about January 2004, up through and
including in or about February 2006, in the Southern District of
New York and elsewhere, JOHN ARDITO, a/k/a "Buster," RALPH
BALSAMO, a/k/a "the Undertaker," a/k/a "Skully,"and VINCENT
RUSSO, a/k/a "Vinny," the defendants, and others known and
unknown, unlawfully, willfully and knowingly did use
intimidation, threaten, and corruptly persuade another person,
and did attempt to do so, with intent to influence, delay, and
prevent the testimony of such person in an official proceeding,
and to hinder, delay and prevent the communication to a law
enforcement officer and judge of the United States of information
relating to the commission and possible commission of a federal
offense, to wit, ARDITO, BALSAMO, RUSSO, and other members and
associates of the Genovese Organized Crime Family, corruptly

persuaded Victim-4 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an assault on Victim-4 in which a portion of Victim-4's ear was bitten off by a member of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and 2.

### Racketeering Act Nine - Obstruction Of Justice of Victim-5

25.   The defendants named below committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Nine:

a.   From in or about Summer 2002, up through and including in or about October 2005, in the Southern District of New York and elsewhere, LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," and JOHN ARDITO, a/k/a "Buster," the defendants, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to use intimidation, threaten, and corruptly persuade another person, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, BELLOMO, ARDITO, and other members and associates of the Genovese Organized Crime Family, agreed to locate a person

("Victim-5"), a suspected cooperating witness, in order to prevent or otherwise influence Victim-5's testimony at a federal criminal trial, in violation of Title 18, United States Code, Sections 1512(b) and (k).

b.   From in or about Summer 2002, up through and including in or about October 2005, in the Southern District of New York and elsewhere, LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," and JOHN ARDITO, a/k/a "Buster," the defendants, and others known and unknown, unlawfully, willfully and knowingly did use intimidation, threaten, and corruptly persuade another person, and did attempt to do so, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, BELLOMO, ARDITO, and other members and associates of the Genovese Organized Crime Family, attempted to locate Victim-5, a suspected cooperating witness, in order to prevent or otherwise influence Victim-5's testimony at a federal criminal trial, in violation of Title 18, United States Code, Sections 1512(b) and 2.

**Racketeering Act Ten - Obstruction Of Justice of Victim-6**

26.   JOHN ARDITO, a/k/a "Buster," committed the following acts of racketeering, any one of which alone constitutes the commission of Racketeering Act Ten:

a.   From in or about 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, JOHN ARDITO, a/k/a "Buster," the defendant, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to use intimidation, threaten, and corruptly persuade another person, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, ARDITO, and other members and associates of the Genovese Organized Crime Family, agreed to corruptly persuade a person ("Victim-6") to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an extortion of Victim-6 by members and associates of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and (k).

34

b.    From in or about 2004, up through and including in or about January 2005, in the Southern District of New York and elsewhere, JOHN ARDITO, a/k/a "Buster," the defendant, and others known and unknown, unlawfully, willfully and knowingly did use intimidation, threaten, and corruptly persuade another person, and did attempt to do so, with intent to influence, delay, and prevent the testimony of such person in an official proceeding, and to hinder, delay and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a federal offense, to wit, ARDITO, and other members and associates of the Genovese Organized Crime Family, corruptly persuaded Victim-6 to withhold information from federal law enforcement officers and truthful testimony in an official proceeding, which information and testimony related to an extortion of Victim-6 by members and associates of the Genovese Organized Crime Family, in violation of Title 18, United States Code, Sections 1512(b) and 2.

### Racketeering Act Eleven - Illegal Gambling

27.    From at least in or about December 1999, up through and including in or about April 2001, in the Southern District of New York and elsewhere, RALPH BALSAMO, a/k/a "the Undertaker," a/k/a "Skully," the defendant, and others known and unknown, unlawfully, willfully, and knowingly conducted, financed, managed, supervised, directed, and owned all and part

of an illegal gambling business, namely, a large-scale bookmaking and sports betting operation, in violation of New York State Penal Law Sections 225.00 and 225.10, and which business involved five and more persons who conducted, financed, managed, supervised, directed, and owned all and part of it, and which business had been and remained in substantially continuous operation for a period in excess of thirty days and had gross revenues of $2,000 in a single day, in violation of Title 18, United States Code, Sections 1955 and 2.

(Title 18, United States Code, Section 1962(c).)

### COUNT THREE

(Murder in Aid of Racketeering)

The Grand Jury further charges:

28.  At all times relevant to this Indictment, the Genovese Organized Crime Family, as more fully described in Paragraphs 1 through 12 of this Indictment, which are repeated, realleged, and incorporated by reference as though set forth fully herein, constituted an enterprise, as that term is defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce.

29.  At all times relevant to this Indictment, the above-described enterprise, through its members and associates,

engaged in racketeering activity, as that term is defined in
Title 18, United States Code, Sections 1959(b)(1) and 1961(1),
namely, acts involving murder, in violation of New York State
Penal Law, acts indictable under Title 18, United States Code,
Sections 892, 893 and 894 (involving the making, financing, and
collecting of extortionate extensions of credit), acts indictable
under Title 18, United States Code, Section 1951 (involving
extortion), acts indictable under Title 18, United States Code,
Section 1956 (involving money laundering), acts indictable under
Title 18, United States Code, Section 1512 (involving obstruction
of justice and witness tampering), acts indictable under Title
18, United States Code, Section 1955 (operation of an illegal
gambling business).

        30.  In or about 1998, in the Southern District of New
York and elsewhere, for the purpose of gaining entrance to and
maintaining and increasing their positions in the Genovese
Organized Crime Family, an enterprise engaged in racketeering
activity, LIBORIO S. BELLOMO, a/k/a "Barney Bellomo," the
defendant, and others known and unknown, unlawfully,
intentionally, and knowingly did murder and aid and abet the
murder of Ralph Coppola, in violation of New York State Penal
Law, Sections 125.25 and 20.00.

        (Title 18, United States Code, Section 1959(a)(1).)